Joshua D. Samra (SBN 313050)
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, CA 94607
Tel. (341) 217-0550
jsamra@stranchlaw.com

Andrew K. Murray, *pro hac vice forthcoming*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
amurray@stranchlaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| DESHAUN JOHNSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOMOCREDIT, INC.<br><br>Defendant. | Case No. 3:26-cv-01172<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT – 1

Plaintiff Deshaun Johnson ("Plaintiff" or "Mr. Johnson"), individually and on behalf of all others similarly situated, brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, against Defendant TomoCredit, Inc. ("TomoCredit" or "Defendant").

## I. NATURE OF ACTION

1. Prisoners of their own devices. Recent decades have found Americans increasingly termed as such, especially when the device of note is a cellular telephone. For those prisoners/citizens who are dependent upon their phones for communication, navigation, and livelihood, nothing constitutes cruel and unusual punishment quite like repeat, unsolicited telemarketing calls or text messages. Such contact is often frustrating, intrusive, and unhelpful. "A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

2. "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry." *Krakauer*, 925 F.3d at 649 (referencing 47 C.F.R. § 64.1200(c)(2)). The national Do-Not-Call Registry ("DNC Registry") permits those who no longer wish to receive telephone solicitations to add their number to the list. "The TCPA then restricts solicitations that can be made to that number." *Id.* (quoting 16 C.F.R. § 310.4(b)(iii)(B) "It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the 'do-not-call' registry, maintained by the Commission."). Private suits can seek either monetary or injunctive relief. *Id.* To put it simply, the TCPA affords relief to those who, "despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.* at 650.

3. Plaintiff is a citizen just so harmed by the intrusions committed by the defendant. TomoCredit is a business that transmits automated marketing text messages to Plaintiff and others similarly situated. In the course of their advertising efforts, Defendant regularly violates 47 C.F.R.

CLASS ACTION COMPLAINT – 2

§ 64.1200(c) and, in turn, 47 U.S.C. § 277(c)(5) by causing marketing text messages to be sent to cellular telephone numbers which are registered with the DNC Registry.

4. Plaintiff brings this action to enforce the TCPA, on behalf of himself and other putative class members who are on the DNC Registry and to whom Defendant has transmitted marketing text messages.

5. A class action is the best means of obtaining redress for Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## II. JURISDICTION

6. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the TCPA, 47 U.S.C. §227, which is a federal statute.

7. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant's principal address is in this District.

## III. DIVISIONAL ASSIGNMENT

8. Pursuant to Civil L.R. 3-2(c), filing is proper in the San Francisco Division because the defendant's principal address in San Francisco County.

## IV. PARTIES

9. Plaintiff Deshaun Johnson is a Nevada citizen and resident of Clark County, Nevada.

10. Defendant TomoCredit is a Delaware corporation with its principal address located in this District: 301 Howard Street, Suite 950, San Francisco, California, 94105.

## V. TCPA BACKGROUND

11. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 613 (2020).

12. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

CLASS ACTION COMPLAINT – 3

13. The TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service or to a number that is charged per call. *See* 47 U.S.C. § 227(b)(1)(A). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14. The Federal Trade Commission ("FCC") retains authority to issue regulations which implement the TCPA and acknowledges that automated text messages are prohibited under the law. The agency has observed that month after month, "unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 1(2015).

15. The TCPA also prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

16. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

17. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

18. The consent-based protections meant to curtail consumer complaints extend to both phone calls and text messages. The main thrust of section 227(c) is its prohibition of certain telephone solicitations which the statute defines as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of[] … property, goods, or services." 47 U.S.C. § 227 (a)(4), (c)(1). "This language makes clear that Congress was more concerned with the purpose of the telephone communications it proscribed in the TCPA than the form in which those communications are transmitted." *Wilson v. Medvidi Inc.*, No. 5:25-cv-03996-BLF, 2025 WL 2856295 at *3 (Oct. 7,

CLASS ACTION COMPLAINT – 4

2025). Given the statute's goal of protecting residential telephone subscribers' privacy rights, "it strains belief to suggest that Congress silently determined that such oral messages were more invasive or objectionable than written ones." *Id*. (citing *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 799 (9th Cir. 2017) ("When Congress passed the [TCPA] it sought to protect individuals against invasions of privacy, in the form of unwanted calls (and now text messages) using automatic telephone dialing systems."). A text message to a cellular telephone then, "it is undisputed, qualifies as a call[.]" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). Thus, "telephone call," as contemplated by 47 U.S.C. § 227(c), encompasses the kind of text messages that Plaintiff complains of here. *See Wilson*, 2025 WL 2856295 at *3-4.

19. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## VI. FACTUAL ALLEGATIONS

20. Plaintiff has, at all relevant times, had a cellular telephone with the capability to receive and transmit phone calls.

21. He acquired his current phone number in 2021.

22. Plaintiff uses his telephone for personal, residential and household purposes. Plaintiff's telephone number is not associated with a business.

23. Plaintiff registered his telephone number on the National Do Not Call Registry in September 2025.

24. Plaintiff is not a customer of the Defendant.

25. Plaintiff has never consented to receive calls or text messages from Defendant.

26. Despite this, Plaintiff has received automated text messages from the Defendant on multiple occasions.

27. On November 10, 2025, Plaintiff received two text messages on his cellular phone from Defendant from telephone number 43909. A screenshot of the text message is below:

CLASS ACTION COMPLAINT – 5



28. As reflected in the screenshot above, the two identical messages were sent in quick succession, one at 4:58 p.m. and the other at 4:59 p.m.

29. Plaintiff was not interested in Defendant's products or services as he made clear when he replied, "leave me alone[.]"

30. However, on November 16, 2025 at 8:03 p.m., Plaintiff received a second text message on his cellular telephone from Defendant. Again, the text message was sent from telephone number 43909:



31. Plaintiff was still not interested in Defendant's products or services. Accordingly, he transmitted the same reply, "leave me alone[,]" via text message on the following day, November 17, 2025.

32. Defendant, however, did not relent. Plaintiff received additional text messages from Defendant on November 17, 2025, and November 20, 2025:

CLASS ACTION COMPLAINT – 6



33.     Then, on November 22, 2025, Defendant sent an additional text message to which Plaintiff clearly replied, "[I] already told you to stop texting me[.]" Plaintiff included the word "stop" in his reply in hopes of satisfying the unsubscribe instructions provided within the Defendant's messages:

CLASS ACTION COMPLAINT – 7

1   34.     Despite Plaintiff's clear wishes, Defendant continued to transmit text messages to Plaintiff's cellular telephone number. Defendant sent one message on Tuesday, November 25 and two on November 26:



35.     Again, Plaintiff was not interested in Defendant's products or services and was irritated by the repeat text message solicitations. Even so, Defendant continued to pelt Plaintiff with additional messages on Thursday, November 27, and Friday, November 28:

CLASS ACTION COMPLAINT – 8

[Screenshot of text messages from TomoCredit:

Thursday 10:33 AM — "TomoCredit: Family Plan today ONLY. Get $100K VIP + bring one family member free. Tap to move forward on Thanksgiving. https://brz.ai/p/yOmYewzf"

Friday 11:50 AM — "TomoCredit: deshaun, VIP is 70% off today. Save up to $700. If you were ever going to upgrade, this is the day. Tap to get it. https://brz.ai/p/ZqR5jifH4&utm_id=bf6092b0-f47c-4fc5-b732-f48138496577&term=yearly&tier=VIP&referralCode=YEARLY70"

"TomoCredit: deshaun, VIP is 70% off today. Save up to $700. If you were ever going to upgrade, this is the day. Tap to get it."]

36.     After receiving a second text message on Friday, November 28, Plaintiff sent Defendant a reply which again asked Defendant to stop transmitting text messages to Plaintiff's phone number. Plaintiff stated that he had "already told your company to stop texting me[,]" referencing his multiple previous requests that Defendant stop sending him text messages. The November 28, 2025, exchange is provided here:

CLASS ACTION COMPLAINT – 9



37. Plaintiff became frustrated when Defendant responded to his request with an additional text message containing unsubscribe instructions. The instructions stated that Plaintiff could reply with the word "STOP" to unsubscribe from the messages. So, Plaintiff replied yet again, using the word "stop" twice within the same message:



38. Plaintiff's request that Defendant stop harassing him was not granted. Defendant continued to transmit unwanted text messages to Plaintiff daily. In addition to the text messages shown above, Defendant has continued to send Plaintiff unwanted text messages from November 29, 2025, onward.

39. To Plaintiff's annoyance, Defendant began to increase the frequency with which it transmitted text messages in December 2025. Defendant sent multiple daily text messages for the entire month of December, culminating in three unwanted messages on the last day of the year.

CLASS ACTION COMPLAINT – 10

Indeed, Defendant peppered Plaintiff's New Year's Eve with marketing text messages sent to Plaintiff's cellular telephone at 11:04 a.m., 3:52 p.m., and 5:41 p.m., on December 31, 2025.

40. The trend has continued into 2026 when Defendant continues to send unwanted text messages to Plaintiff, typically at multiple times on the same day.

41. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated on repeat occasions, subjecting them to annoyance and frustration.

## VII. CLASS ACTION ALLEGATIONS

42. As authorized by Rule 23(b) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following class (the "Class"), as defined as follows:

> All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received one or more telemarketing calls or text messages from or on behalf of the Defendant (3) within the four years preceding the filing of the Complaint.

43. Excluded from the Class are: (1) the Defendant and any entities in which the Defendant has a controlling interest, and their agents, employees, and legal representatives; (2) undersigned counsel for Plaintiff; and (3) any judge to whom this action is assigned, together with any member of such judge's staff and immediate family.

44. The Class, as defined above, is identifiable through phone records and phone number databases that will be obtained through discovery.

45. Class members likely number in the hundreds or thousands. Mass marketing campaigns of the sort conducted by TomoCredit typically target that many consumers in a single day. Accordingly, Plaintiff alleges that the unsolicited text messages sent by and/or on behalf of Defendant were transmitted to the cellular telephone numbers of hundreds and potentially thousands of Class Members. As such, individual joinder of these persons is impracticable and Fed. R. Civ. P. 23(a)(1) is satisfied.

46. Plaintiff is a member of the Class. His claims are typical of the claims of the Class, as required by Fed. R. Civ. P. 23(a)(3), in that Plaintiff received unsolicited text messages from Defendant without his prior express consent and while his phone number was listed on the National

Do Not Call Registry. Plaintiff's claims, like the claims of the Class, arise out of the same common course of conduct by the Defendant and the same relief is sought.

47. The factual and legal bases of Defendant's misconduct are common to all members of the Class and represent a common cause of injury to Plaintiff and the Class.

48. Numerous questions of law and fact are common to the Class and predominate over questions affecting only individual Class members, as required by Fed. R. Civ. P. 23(a)(2) and 23(b)(2). These questions include but are not limited to the following:

    a. Whether TomoCredit's conduct constitutes a violation of the TCPA;

    b. Whether the text messages were transmitted without obtaining the recipients' prior consent; and

    c. Whether Plaintiff and the class members are entitled to statutory damages because of the Defendant's actions.

49. Plaintiff will fairly and adequately represent and protect the Class, as required by Fed. R. Cov. P. 23(a)(4). Plaintiff's interests do not conflict with the interests of the Class. Further, Plaintiff is represented by counsel skilled and substantially experienced in class actions, including TCPA class actions.

50. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case and given the small recoveries available through individual actions.

51. Plaintiff and his counsel are committed to the vigorous prosecution of this action on behalf of the Class and have the financial resources to do so.

## VIII.  CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Class)**

52. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

53. It is a violation of the TCPA to initiate a telephone solicitation to a residential telephone subscriber who has registered their telephone number on the DNC Registry. 47 C.F.R.

§ 64.1200(c)(2). The foregoing acts and omissions of Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, because they caused the transmission of unauthorized text messages to Plaintiff and the members of the Class despite their telephone numbers being on the National Do Not Call Registry.

54. The Defendant's violations were negligent, willful, or knowing.

55. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an injunction and up to $500 in damages for each violation. 47 U.S.C. § 227(c)(5).

56. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing calls (whether directly or via agents) to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully prays for the following relief:

A. An order certifying the claims of Plaintiff and all other similarly situated persons as defined above;

B. Appointment of Plaintiff as a representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An award to Plaintiff and the Class of damages, as allowed by law;

F. An award of attorneys' fees and costs; and

G. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## X.  DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues.

RESPECTFULLY SUBMITTED AND DATED this 6th day of February, 2026.

**STRANCH, JENNINGS & GARVEY, PLLC**

*/s/ Joshua D. Samra*
Joshua D. Samra (SBN 313050)
1111 Broadway, Suite 300
Oakland, CA 94607
Tel. (341) 217-0550
jsamra@stranchlaw.com

Andrew K. Murray, *pro hac vice forthcoming*
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
amurray@stranchlaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT – 14